IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS

**Robert Donald Mann**                                                                          **Plaintiff**

v.                                        No. 5:14-CV–087-DPM-JTK

**Carolyn W. Colvin, Acting Commissioner,**
**Social Security Administration**                                                **Defendant**

## Recommended Disposition

### Instructions

The following recommended disposition was prepared for U.S. District Judge D.P. Marshall.  A party to this dispute may file written objections to this recommendation.  An objection must be specific and state the factual and/or legal basis for the objection.  An objection to a factual finding must identify the finding and the evidence supporting the objection.  Objections must be filed with the clerk of the court no later than 14 days from the date of this recommendation.[1]  The objecting party must serve the opposing party with a copy of an objection.  Failing to object within 14 days waives the right to appeal questions of fact.[2]  If no objections are filed, Judge Marshall may adopt the recommended disposition without independently reviewing all of the record evidence.

---

[1] 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

[2] *Griffini v. Mitchell*, 31 F.3d 690, 692 (8th Cir. 1994) (failure to file objections waives right to de novo review and to appeal magistrate judge's findings of fact).

**Reasoning for Recommended Disposition**

Robert Donald Mann seeks judicial review of the denial of his application for disability insurance income (DIB).[3] Mann last worked as a collections manager for Americar Auto Sales. He worked there until the business closed in September 2010.[4] Several months later, he applied for DIB and based disability on depression, anxiety, and anger management.[5] He applied for other work, but testified that he did so to collect unemployment benefits.[6] He claims he has been disabled since he lost his job.[7]

**The Commissioner's decision.** After considering Mann's application, the Commissioner's ALJ determined that Mann has severe impairments — back/spine disorder, other arthropathies, morbid obesity, mood disorder (depression), personality disorder, and substance addiction disorder (alcohol) in full sustained remission[8] — but

---

[3] SSA record at p. 123 (alleging disability beginning Sept. 24, 2010).

[4] *Id*. at pp. 150, 167 & 243.

[5] *Id*. at p. 149.

[6] *Id*. at p. 38 (collected unemployment until early 2012); p. 144 (unemployment benefits) & p. 335 (collecting unemployment and applying for work so he can collect benefits; he doubts he can work due to depression).

[7] *Id*. at p. 123.

[8] *Id*. at p. 15.

he can do some light work.[9] Because a vocational expert identified available work,[10] the ALJ determined Mann is not disabled and denied the application.[11]

After the Commissioner's Appeals Council denied a request for review,[12] the decision became a final decision for judicial review.[13] Mann filed this case to challenge the decision.[14] In reviewing the decision, the court must determine whether substantial evidence supports the decision and whether the ALJ made a legal error.[15] This report

---

[9]*Id*. at p. 18 (determining Mann can do light work with the following limitations: (1) occasional stair climbing, balancing, stooping, kneeling, crouching, or crawling, (2) no ladder climbing, (3) no extreme heat, (4) work involving incidental interpersonal contact, (5) work where the complexity of tasks is learned and performed by rote with few variables and little required judgment, and (6) work requiring simple, direct, concrete supervision).

[10]*Id*. at p. 61.

[11]*Id*. at p. 24.

[12]*Id*. at p. 1.

[13]*See Anderson v. Sullivan*, 959 F.2d 690, 692 (8th Cir. 1992) (stating, "the Social Security Act precludes general federal subject matter jurisdiction until administrative remedies have been exhausted" and explaining that the Commissioner's appeal procedure permits claimants to appeal only final decisions).

[14]Docket entry # 1.

[15]*See* 42 U.S.C. § 405(g) (requiring the district court to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner conformed with applicable regulations); *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) ("We will uphold the Commissioner's decision to deny an applicant disability benefits if the decision is not based on legal error and if there is substantial evidence in the record as a whole to support the conclusion that the claimant was not disabled.").

explains why substantial evidence supports the decision and why the ALJ made no legal error.

**Mann's allegations**. Mann doesn't challenge the determination about his physical ability to work, but insists depression and anxiety prevent him from working. He relies primarily on his psychiatrist's opinion about his ability to work. The psychiatrist reported mental limitations that, if true, prevent working. Mann contends the ALJ erred in giving the opinion less than controlling weight, because he maintains the reported limitations are consistent with other medical evidence. For this reason, he claims substantial evidence does not support the decision.[16]

**Applicable legal principles**. For substantial evidence to support the decision, a reasonable mind must accept the evidence as adequate to show Mann can work within the ALJ's parameters.[17] Mann doesn't challenge his exertional limitations, so the court need only consider the following non-exertional limits: (1) work involving incidental interpersonal contact, (2) work where the complexity of tasks is learned and performed by rote with few variables and little required judgment, and (3) work requiring simple,

---

[16]Docket entry #s 9 & 15.

[17]*See Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009) ("Substantial evidence exists if 'a reasonable mind would find such evidence adequate.' Substantial evidence is 'less than a preponderance, but enough that a reasonable mind would find it adequate to support the ALJ's decision.'"); *Britton v. Sullivan*, 908 F.2d 328, 330 (8th Cir. 1990) ("Substantial evidence 'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'").

direct, concrete supervision.[18]  The Commissioner's regulations provide for "controlling weight" if the psychiatrist's opinion is well-supported by medically acceptable clinical diagnostic techniques and is consistent with other substantial evidence.[19]  The court must determine whether the ALJ had a sufficient basis for giving the opinion less than controlling weight.

**The ALJ had a sufficient basis for giving the opinion less than controlling weight**.  The regulations favor treating-physician opinions, in part, because treating physicians "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s)…."[20]  For this reason, the length of the treatment relationship and the frequency of examination are important considerations in weighing a treating-physician opinion.[21]  In general, the longer the physician has treated the claimant, and the more times the physician has seen the claimant, the more weight the opinion deserves.[22]

**Mann suggests a much longer treatment relationship than actually existed**.

---

[18]SSA record at p. 18.

[19]*Perkins v. Astrue*, 648 F.3d 892, 897-98 (8th Cir. 2011); *Dolph v. Barnhart*, 308 F.3d 876, 878-79 (8th Cir. 2002).

[20]20 C.F.R. § 404.1527(c)(2).

[21]*Id*.

[22]*Id*.

Mann testified that he had seen the psychiatrist since 2006,[23] but he over-stated the extent of his relationship with the pscyhiatrist. The psychiatrist evaluated Mann in July 2006 as part of an overnight hospitalization.[24] The psychiatrist diagnosed depression and alcohol abuse. The diagnosis alone has little probative value because: (1) the diagnosis predates the time period for which were denied,[25] (2) a diagnosis does not equate to disability,[26] (3) Mann's depressive symptoms resolved with treatment,[27] (4) Mann worked for several years after the diagnosis,[28] and (5) depression was not the reason Mann stopped working.[29]

Mann relies on the July 2006 diagnosis to establish a long-term treatment

---

[23] SSA record at p. 42 (testifying that he has seen the psychiatrist since 2006).

[24] *Id.* at pp. 390 & 393-94.

[25] *Roberson v. Astrue*, 481 F.3d 1020, 1026 (8th Cir. 2007) ("Evidence is material if it is 'relevant to claimant's condition for the time period for which benefits were denied.'").

[26] *Harris v. Barnhart*, 356 F.3d 926, 929 (8th Cir. 2004) ( a diagnosis does equate to disability; claimant must meet all requirements).

[27] SSA record at p. 260-61 (denying depression, anxiety and agitation on Oct. 19, 2009) & p. 279-80 (reporting no depression, anxiety or agitation on Aug. 30, 2010).

[28] *Id.* at p. 167 & 243 (reporting full time work as collections manager from Sept. 11, 2006 to Sept. 24, 2010).

[29] *Id.* at p. 37 (testifying that he worked until the business closed) & p. 149 (reporting that he stopped working for reasons other that his stated reasons for disability).

relationship, but in actuality, Mann's treatment relationship began in May 2011 — a couple of weeks after he applied for DIB.[30]  Between July 2006 and May 2011, Mann obtained psychotropic medications from his primary care physician.[31]

**Mann suggests more frequent treatment than actually occurred**.  Mann characterizes the psychiatrist as a medical professional "who worked day in and day out … on his major mental problems,"[32] but Mann did not see the psychiatrist on a frequent basis.  Mann told the psychological examiner that he saw the psychiatrist monthly;[33] in actuality, he saw the psychiatrist four times in the 13 months preceding the hearing, none of which were during a period of employment.[34]  Four visits in 13 months establishes a treatment relationship, but does not demand controlling weight because the opinion must be supported to receive controlling weight.  The reported limitations suggest a need for frequent treatment, but the psychiatrist instructed Mann

---

[30]*Compare id*. at p. 123 (applying for DIB on Apr. 26, 2011) *with id*. at p. 370 (initial psychiatric evaluation on May 16, 2011).

[31]*Id*. at p. 334 (he obtained his psychotropic drugs from his primary care physician in Pine Bluff because the psychiatrist moved to Little Rock).

[32]Docket entry # 9, p. 19.

[33]SSA record at p. 335.

[34]*Id*. at p. 370 (initial psychiatric evaluation on May 16, 2011); p. 368 (medication maintenance visit on June 3, 2011); p. 364 (medication maintenance visit on July 22, 2011); p. 360 (medication maintenance visit on Sept. 21, 2011).

to return at two or three months intervals.[35] To the extent Mann relies on individual therapy, he attended five therapy sessions in the 14 months before the hearing.[36] The frequency of Mann's treatment suggests no disabling symptoms.

**Treatment notes do not support the psychiatrist's opinion**. The regulations direct more weight if the treating physician presents medical findings that support the opinion; the better an explanation the physician provides, the more weight the opinion receives.[37] The psychiatrist provided no explanation for the reported limitations. In the absence of an explanation, there are two possible sources for the reported limitations: (1) the psychiatrist's treatment notes, and (2) Mann's subjective reports. Neither source supports the reported limitations.

There is no contemporaneous examination. The most recent examination occurred four months earlier. At that time, Mann said he "has been doing fairly well."[38] He denied any significant problems.[39] He reported improved anger and irritability.[40]

---

[35]*Id*. at p. 369 (return in two months); p. 365 (return in two months); p. 361 (return in three months).

[36]*Id*. at p. 367 (June 10, 2011); p. 366 (June 24, 2011); p. 363 (July 22, 2011); p. 362 (Aug. 19, 2011) & p. 359 (Oct. 17, 2011)

[37]20 C.F.R. § 404.1527(c)(3).

[38]SSA record at p. 360.

[39]*Id*.

[40]*Id*.

His affect was consistent with "good mood."[41] He denied suicidal or homicidal thoughts.[42] These medical findings contradict the reported limitations. On the whole, treatment notes show Mann's symptoms improve with treatment.[43] "An impairment which can be controlled by treatment or medication is not considered disabling."[44]

**The psychiatrist's opinion is inconsistent with other substantial evidence**. "[A]n ALJ may grant less weight to a treating physician's opinion when that opinion conflicts with other substantial medical evidence contained within the record."[45] The regulations direct more weight if a treating-physician opinion is consistent with the record as a whole.[46] Mann argues that the psychiatrist's opinion conforms with other substantial evidence, but it conforms only as to area of limitation; it differs in respect to the degree of limitation.

For example, the psychiatrist reported moderate limitations in the ability to

---

[41]*Id*.

[42]*Id*.

[43]*Id*. at p. 370 (at the initial psychiatric evaluation, he reported that he was slipping back in bad depression); p. 368 (two weeks later, he reported doing about the same but a little better); p. 363 (seven weeks later, he reported being a little more irritable lately, his anxiety was a little worse around people) & p. 360 (eight weeks later, doing fairly well, anger and irritability were better).

[44]*Estes v. Barnhart*, 275 F.3d 722, 725 (8th Cir. 2002).

[45]*Prosch v. Apfel*, 201 F.3d 1010, 1013-14 (8th Cir. 2000).

[46]20 C.F.R. § 404.1527(c)(4).

perform simple, one-or-two step tasks, such that Mann can perform simple tasks for 5 to 15 minutes at a time, for 2 to 3 hours in an 8-hour day.[47] If that's true, there is no work Mann can do.  In contrast, the psychological examiner reported that Mann showed no difficulty with cognitive tasks.[48]  He recalled 2 of 3 objects after a 5-minute wait, and 3 of 3 with prompting; he repeated 6 numbers forward and 3 numbers in reverse; he completed serial 3s.[49]  Logically, a person who can do those tasks can also do simple, one-to-two step tasks.

However, the psychological examiner reported a poor capacity to cope with the mental and cognitive demands of work, and the need for extra time to complete unfamiliar tasks.[50]  Those reports do not implicate the ALJ's parameters because the ALJ required unskilled work that is done by rote.  The psychiatrist's reported limitations preclude even rote, unskilled work.

According to the psychiatrist, Mann has marked limitations in interacting appropriately with the general public and customers, getting along with co-workers and peers, and maintaining socially appropriate behavior, such that failure would occur

---

[47]SSA record at pp. 386-89.

[48]*Id*. at p. 338.

[49]*Id*. at p. 336.

[50]*Id*. at pp. 337-38.

in 5 to 15 minutes.[51]  In contrast, the psychological examiner reported that Mann can communicate and interact appropriately, but prefers to isolate himself; social outings agitate him.[52]  The psychiatrist's opinion and the psychologist report are similar in that both support difficulty with interpersonal contact, but that similarity doesn't disable Mann because some work requires minimal interpersonal contact.  The ALJ had a sufficient basis for giving the opinion less than controlling weight because the reported limitations were unsupported.

**According to agency mental health experts, Mann can do unskilled work that requires little interpersonal contact**.  The agency mental health experts reviewed the psychiatrist's treatment notes and the psychological examiner's report, and opined that Mann can do work involving: (1) incidental interpersonal contact, (2) tasks learned and performed by rote with few variables and little required judgment, and (3) simple, direct, concrete supervision.[53]  The limits on interpersonal contact and supervision respond to Mann's difficulties interacting with others; the limits on the complexity of work responds to an problems with concentration.  Mann's past-time activities — reading and using the internet — are consistent with the limitations.  Although a non-

---

[51]*Id*. at pp. 386-89.

[52]*Id*. at pp. 335 & 337.

[53]*Id*. at pp. 342 & 384.

examining expert opinion deserves less weight than a well-supported treating-physician opinion, the psychiatrist's opinion is not well-supported. A reasonable mind would accept the evidence, despite the psychiatrist's opinion, as adequate to show Mann can work within the ALJ's parameters.

## Conclusion and Recommended Disposition

The ALJ did not err in giving the psychiatrist's opinion less than controlling weight because the opinion was inconsistent with treatment notes and other substantial evidence. A reasonable mind would accept the evidence as adequate to support the ALJ's decision because the ALJ's limitations respond to Mann's symptoms. For these reasons, the undersigned magistrate judge recommends DENYING Mann's request for relief (docket entry # 2) and AFFIRMING the Commissioner's decision.

Dated this 5th day of November 2014.

_____
United States Magistrate Judge